### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF GEORGIA
### COLUMBUS DIVISION

MESSIAHIC, INC., d/b/a         )
PAYJUNCTION,                  )
                               )
      Plaintiff,           )     Civil Action
                               )
v.                        )     No._____
                               )
GLASSER IMAGES, LLC, and    )
JACK GLASSER,            )
                               )
      Defendants.        )

## VERIFIED COMPLAINT

Plaintiff Messiahic, Inc. d/b/a PayJunction ("PayJunction") files this Complaint against Defendants Glasser Images, LLC ("Glasser Images") and Jack Glasser ("Glasser") (collectively, "Defendants"), and shows this Court as follows:

### I. PARTIES

1.     PayJunction is a California corporation with a principal place of business at 1903 State Street, Santa Barbara, California, 93101.

2.     Glasser Images is a North Dakota limited liability company with a principal place of business at 510 E. Main Avenue, Suite 3A, Bismarck, North Dakota, 58501-4411.

3.      Glasser is an individual and a resident of Bismarck, North Dakota. Glasser's residence is located at 817 14th Street SE, Mandan, North Dakota, 58554.

## II. JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 based on complete diversity of citizenship between PayJunction and Defendants. The amount in controversy exceeds $75,000.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and the Parties have expressly consented to venue in this district.

## III. FACTS COMMON TO ALL COUNTS

### A. Merchant Services Agreement and Glasser's Guaranty

6.      PayJunction provides merchant card payment processing services to various merchant entities across the country.

7.      Glasser Images is a wedding photography and videography company that specializes in wedding images and videos. Glasser is the President of Glasser Images.

8.      Glasser, individually and on behalf of Glasser Images, first executed a merchant application and guaranty on October 12, 2013. On December 4, 2017, Glasser, on behalf of Glasser Images, executed a new Merchant Application ("Application") in connection with a rate review which incorporated certain Terms

-2-

& Conditions ("T&Cs") (collectively, the "Merchant Services Agreement"). A true and correct copy of the Application is attached hereto as Exhibit "A." A true and correct copy of the T&Cs are attached hereto as Exhibit "B."

9.      As he did with the previous merchant application, Glasser also executed a personal guaranty (the "Guaranty") under which he guaranteed payment of all obligations of Glasser Images under the Merchant Services Agreement.

10.      Under the Merchant Services Agreement, PayJunction, as the payment processor and ISO,[1] provided payment processing services to Glasser Images.

## B. The Chargeback Process

11.      Cardholder customers who enter into credit card transactions with a merchant are entitled to dispute, or question, a charge when a product or service is not properly delivered as promised.

12.      Cardholder customers can question or dispute a transaction with a merchant in two ways: retrievals and chargebacks.

13.      To dispute a transaction through retrievals, the cardholder questions a merchant charge and "retrieves information" on the transaction. The cardholder's issuing bank or association will submit the query to the merchant on behalf of the

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Merchant Services Agreement, as applicable.

128006404.1

cardholder.  The merchant can respond to the inquiry and perhaps avoid a future chargeback.  The merchant's failure to respond to a retrieval request will generally result in the submission of a chargeback by the issuing bank/association.

14.    To dispute a transaction through a chargeback, the cardholder states either that the transaction is unauthorized, or the product/service has not been rendered. The cardholder's issuing bank/association will submit a chargeback on behalf of the cardholder against the merchant. The merchant's account is immediately debited for the amount.  If there are insufficient funds in the merchant's account, the sponsor bank will debit the ISO's account.

15.    The merchant receives notifications for both chargebacks and retrievals in the mail.  The merchant's response timeframe is usually at least seven (7) business days from the notification.

16.    A merchant has the right to respond to a chargeback should the merchant believe it was submitted in error and that the merchant can prove the product/service has been (or will be) provided.   If sufficient evidence is provided by the merchant that the product/service has been (or will be) provided within the response timeframe, the chargeback can be reversed, meaning that the merchant will have the chargeback amount credited back to its merchant account. The merchant's failure to respond within the response timeframe will render the chargeback as valid,

128006404.1

causing the debit to the merchant's account (or ISO's account, if the merchant's account had insufficient funds) to remain with no further option to later reverse such chargeback even if the merchant presents evidence that the product/service has been, or will be, provided.

## C. Merchant Services Agreement Termination

17.     In the first week of October 2021, it was reported that Glasser Images went out of business, closed its doors, and defaulted on its obligations to several its consumers that had contracted for wedding photography and videography. Glasser sent Glasser Images' customers a letter announcing that the company was closing, no refunds would be given to any customer, and blaming the pandemic for its financial misfortunes. It has also been reported that over 500 complaints have been received from customers in North Dakota, South Dakota, Minnesota, Colorado and other states, and that Glasser Images is under investigation by the North Dakota Attorney General's Office.

18.     On October 14, 2021, PayJunction sent a Notice of Termination of Merchant Services Agreement ("Termination Notice") and Notice of Default and Demand for Payment Under Personal Guaranty ("Guaranty Demand") to Glasser Images and Glasser via email and overnight mail. True and correct copies of the

128006404.1

Termination Notice and the Guaranty Demand are attached hereto as Exhibit "C"
and "D," respectively.

19.    PayJunction terminated the Merchant Services Agreement pursuant to
Section 11(b) of the T&Cs due to, among other things, the following events of
default:

- Section 11.2(b)(ii). There was a material adverse change in Glasser Images' financial condition due to recent news reports indicating that Glasser Images "closed its doors" and is no longer in business, and had been the subject of at least 172 complaints received by The North Dakota Attorney General's Office as of October 8, 2021. There was also a material change in Glasser Images' processing activity, and such activity is inconsistent with the Application. PayJunction further determined that such processing activity could result in a loss to PayJunction or Member Bank;

- Section 11.2(b)(iii). Based on recent news reports, Glasser Images terminated its business;

- Section 11.2(b)(v). Glasser Images had a monthly ratio of Chargebacks to Transactions that is excessive;

- Section 11.2(b)(viii). Glasser Images is unable or unwilling to perform its obligations under the Merchant Services Agreement or applicable law; and

- Section 11.2(b)(xvi). Upon information and belief, one or more governmental entities-initiated proceedings against, or an investigation regarding Glasser Images, or PayJunction reasonably believes that a governmental entity may do so.

128006404.1

## D. Glasser Images' Chargebacks

20.     Since Glasser Images abruptly terminated its business, Glasser Images has incurred over $720,000 in unresolved chargeback liability with PayJunction.

21.     Pursuant to the Operating Rules, Glasser Images has a limited timeframe set by the issuing banks, which is generally seven (7) business days from receipt of a chargeback letter from a cardholder, to respond to a chargeback dispute. If Glasser Images does not respond within this period, the chargeback is deemed valid, regardless of whether or not the chargeback is accurate. Glasser Images' merchant account has had insufficient funds to cover these chargebacks, and PayJunction, as the ISO, will be liable for the chargeback amounts without the possibility of a chargeback reversal due to Glasser Images' costly refusal to respond. Therefore, Glasser Images' cooperation with PayJunction and timely responses to recent and forthcoming chargebacks are essential to avoid additional losses for PayJunction and the Defendants.

## E. PayJunction's Efforts to Assist Glasser Images With Its Unresolved Chargebacks

22.     PayJunction learned about Glasser Images' large volume of chargebacks on October 12, 2021. PayJunction's underwriting analyst, Samuel Muthiah, immediately reached out to Glasser via phone and through PayJunction's

support email system to discuss the chargebacks and how best to respond to the chargeback letters that Glasser Images would be receiving.

23.     Glasser did not respond, and PayJunction engaged counsel to escalate these issues and protect its rights.  PayJunction's counsel then sent the Termination Notice and Guaranty Demand described above on October 14, 2021 which requested a response within five days.

24.     Glasser finally sent an email response to the PayJunction support email system requesting a list of chargebacks with customer names on October 19th, 2021. Glasser requested this list even though he had access to (and did access repeatedly) the PayJunction support system that listed each chargeback and provided additional details regarding each chargeback, including the customer names.

25.     PayJunction's counsel repeatedly attempted to set up a call with Mr. Glasser and Defendants' counsel to discuss the chargebacks and how to respond, including emails and calls on October 20, 2021 and October 22, 2021. Glasser's counsel finally agreed to a call on October 25, 2021.

26.     On October 25 2021, PayJunction's Director of Risk, Matt Odirakallumkal ("Odirakuallumkal"), PayJunction's Chief Operating Officer, Eric Wernicke, and PayJunction's counsel attended the call with Glasser Images on

128006404.1

behalf of PayJunction. Defendants' counsel was the only representative of Glasser Images on the call.

27.     PayJunction's representatives explained how essential it was that Glasser Images respond to the chargebacks as soon as possible to avoid additional losses and that his opportunity to respond to older chargebacks was being lost with each passing day. Defendants' counsel indicated that some of the chargebacks were for photographs that had been taken but had not yet been delivered but would be and that some of them were still within the timeframe allowed for delivery under the Glasser Images contracts.

28.     Defendants' counsel understood that if Glasser Images communicated to its customers that photographs would be delivered, the current chargebacks could be disputed, and the number of new chargebacks would likely decrease. Defendants' counsel agreed to provide documents and information to PayJunction, including email communications to customers, a sample contract, and a list of open wedding events, to allow PayJunction to advise Glasser on how best to respond to the chargeback letters.

29.     Defendants' counsel also agreed to a call between Glasser and PayJunction to discuss Glasser Images' responses to the chargebacks.  Glasser's involvement was essential since Glasser Images had information regarding whether

128006404.1

wedding photographs and videos had already been taken and simply not delivered, whether Glasser Images' customer agreements still allowed time for the delivery of the wedding photographs and videos, and whether Glasser Images could possibly deliver the wedding photographs and videos as required. PayJunction's counsel sent an email on October 25 summarizing all of the action items discussed on the call.

30.     On October 26, 2021, Odirakallumkal emailed Glasser, copying his attorneys, to propose a call at 11:00 a.m. that day, and reminding him that there was a limited time to respond to chargebacks before the chargebacks were automatically "lost." Defendants' counsel then emailed saying they were not available.

31.     Odirakallumkal immediately inquired when Defendants and their counsel would be available and Defendants' counsel suggested 3:00 p.m. Odirakallumkal then received an email from Glasser saying that he would not be able to meet that day. Odirakallumkal sent another email stressing the urgency of addressing the chargeback disputes and proposing 9:00 a.m. the next day. Glasser agreed to that time and Defendants' counsel said that he would try to make it work.

32.     On October 27, 2021, Defendants' counsel emailed that morning that he was getting on a plane so the time would not work. Odirakallumkal then proposed that he have the call with Glasser without counsel present, since Glasser was still available, or with different counsel present as soon as possible.

-10-

33.   Odirakallumkal also described how Glasser was able to see all the information that he was requesting in PayJunction's support system. Defendants' counsel then responded indicating that both attorneys' schedules were too busy for a meeting and requested a list of information, including customer names that Glasser could compile himself.

34.   Odirakallumkal sent an email attaching the requested information with customer names, requesting the information that Defendants' counsel promised to provide and indicating that PayJunction was available to talk at any time. PayJunction's counsel then sent follow-up emails on October 27, 2021, October 28, 2021, October 30, 2021 and November 5, 2021 to Defendants' counsel regarding its failure to respond or perform any of the action items set forth in the October 25, 2021 email, including direct communications between PayJunction and Glasser to discuss his responses to chargebacks.

35.   PayJunction and its counsel have reached out to Defendants and their counsel numerous times to explain the chargeback response process and the information required for an effective dispute of a chargeback, including supporting documentation, such as invoices or customer agreements related to each chargeback, and other details for the transaction, such as the goods or services provided by

Glasser Images, the time in which Glasser Images has to provide goods or services, and whether or not each chargeback is accurate.

36.     Due to Defendants' delay and lack of responsiveness to timely address the mounting chargebacks, PayJunction's damages continue to accrue with each passing day that Glasser Images fails to take action to timely respond to chargebacks. Although Glasser Images must respond to chargebacks as the Merchant, PayJunction can monitor the chargebacks. Based on PayJunction's monitoring activity, it appears that Glasser Images is not responding to many of the chargebacks within the required timeframe. Without any response from Glasser Images, PayJunction's liability could soon balloon from $720,000 to over a million dollars in a matter of weeks.

## IV. CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT AGAINST GLASSER IMAGES

37.     PayJunction hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully stated and set forth at length herein.

38.     PayJunction entered into the Merchant Services Agreement with Glasser Images on December 4, 2017.

39.     The Merchant Services Agreement was a valid agreement between PayJunction and Glasser Images.

-12-

40.     There was a material adverse change in Glasser Images' financial condition due to recent news reports indicating that Glasser Images had "closed its doors" and is no longer in business, and has been the subject of over 500 complaints received by The North Dakota Attorney General's Office. There was also a material change in Glasser Images' processing activity, and such activity was inconsistent with the Application. PayJunction has further determined that such processing activity could result in a loss to PayJunction or Member Bank.

41.     Glasser Images terminated its business.

42.     Glasser Images had a monthly ratio of Chargebacks to Transactions that was excessive.

43.     Glasser Images is or will be unable or unwilling to perform its obligations under the Merchant Services Agreement or applicable law.

44.     One or more governmental entities has initiated proceedings against, or an investigation regarding Glasser Images.

45.     Glasser Images has materially breached the Merchant Services Agreement.

46.     The damages incurred by PayJunction are ongoing, and include all chargeback liability, payment processing fees and expenses, and attorney's fees and costs, all of which are the proximate result of Glasser Images' breaches.

-13-

128006404.1

## COUNT II
## BREACH OF GUARANTY

47.     PayJunction hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully stated and set forth at length herein.

48.     Glasser also executed a personal guaranty under which he guaranteed payment of all obligations of Glasser Images under the Merchant Services Agreement.

49.     The personal guaranty between Glasser and PayJunction is valid.

50.     Glasser Images materially breached and defaulted under its obligations in the Merchant Services Agreement.

51.     Glasser is in breach of the personal guaranty, failing to pay the amounts due from Glasser Images to PayJunction under the terms of the Merchant Services Agreement.

52.     PayJunction is entitled to a judgment against Glasser on his personal guaranty for all damages resulting from Glasser Images' defaults and breaches under the Merchant Services Agreement.

## COUNT III
## INJUNCTIVE RELIEF

53.     PayJunction hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully stated and set forth at length herein.

128006404.1

54.     There is a substantial likelihood of success on the merits. Glasser Images is obligated to manage chargebacks from its customers under the Merchant Services Agreement. Glasser Images has materially breached the Merchant Services Agreement multiple times, and Glasser and Glasser Images have been nonresponsive to chargeback letters and have refused PayJunction's efforts to assist Glasser Images in timely and properly responding to chargebacks despite over $720,000 in unresolved chargeback activity.

55.     PayJunction will suffer irreparable injury unless the injunction is issued. PayJunction needs Glasser Images to cooperate to prevent and mitigate further damages and to timely and properly respond to chargeback claims. Without responses from Glasser Images, Glasser Images' potential chargeback liability that will be charged to PayJunction could increase from $720,000 to over a million dollars in a matter of weeks. Absent this Court's issuance of an order for this injunctive relief, Glasser Images will not cooperate with PayJunction or respond to chargebacks, and PayJunction will continue to suffer irreparable injury.

56.     Irreparable injury will also be suffered by consumers unless the injunction is issued. Many of the chargebacks relate to the delivery of photographs and videos for weddings and other once-in-a-lifetime events that have already taken place. The photographs and videos were taken at the event but have not been

128006404.1

delivered to the consumer.  The chargeback only allows a consumer to obtain a refund of the amount paid by credit card, but consumers would undoubtedly prefer to have the photographs and videos that were taken at these events delivered to them. If Glasser Images is required to respond to these chargebacks, it will be required to provide evidence that the photographs will be delivered to consumers to have the chargeback reversed.  If Glasser Images instead does nothing to respond to chargebacks, irreparable injury will be suffered by those consumers who may never receive their photographs and videos.

57.    The threatened injury to consumers and PayJunction and consumers outweighs any damage the proposed injunction may cause Glasser and Glasser Images. Glasser Images needs to respond to chargebacks to prevent and mitigate irreparable injury to consumers and PayJunction caused by the numerous chargebacks from Glasser Images' customers and Glasser Images' failure to respond. Without responses to the chargebacks by Glasser Images, consumers may never receive their full wedding packages, and combined losses could continue to increase from $720,000 to over a million dollars in a matter of weeks.

58.    The issuance of an injunction ordering Glasser Images to accurately responding to consumer chargeback complaints from Glasser Images' customers and delivering photographs and videos to customers also best serves the public interest.

128006404.1

Many of these chargebacks relate to the delivery of photographs and videos for weddings and other once-in-a-lifetime events that have already taken place. The photographs and videos were taken at the event but have not been delivered to the consumer. The chargeback only allows a consumer to obtain a refund of the amount paid by credit card, but consumers would undoubtedly prefer to have the photographs and videos that were taken at these events delivered to them.

59.    Upon information and belief, PayJunction understands that the North Dakota Attorney General's office has opened a consumer fraud investigation, and is awaiting a production from Glasser concerning the nature of his activities with regards to Glasser Images, his conduct, and all other relevant documents that pertain to the investigation. The Attorney General's office's involvement further highlights the chargeback issue as a significant concern for the public as well as PayJunction.

COUNT IV
ATTORNEY'S FEES

60.    PayJunction hereby incorporates by reference each and every paragraph set forth in this Complaint as if fully stated and set forth at length herein.

61.    Defendants have acted in bad faith and have caused PayJunction unnecessary difficulty and legal expense due to their numerous defaults and unwillingness to cooperate as they are required to do to respond to over $720,000 in chargeback liability with PayJunction.

62.     Section 20 of the Merchant Services Agreement states that Glasser Images and/or Glasser will be liable for and will indemnify and reimburse PayJunction for all attorney's fees, and other costs and expenses incurred in the enforcement of the Merchant Services Agreement, or in matters relating to the Merchant Services Agreement.

63.     PayJunction is entitled to an award of its attorney's fees and costs related to this action.

**WHEREFORE**, PayJunction prays that this Court:

1.     Enter judgment against Defendants on all counts stated herein;

2.     Grant PayJunction affirmative injunctive relief requiring Glasser Images to timely and properly respond to each chargeback from Glasser Images' customers and cooperate with PayJunction regarding the ongoing and accruing chargeback liability;

3.     Award attorney's fees and court costs to PayJunction; and

4.     Grant all relief as the Court deems just and proper.

128006404.1

Respectfully submitted this 12th day of November 2021.

/s/ Gerald Chichester
Leron E. Rogers
Georgia Bar No. 482620
Gerald Chichester
Georgia Bar No. 210202

*Attorney for Plaintiff
Messiahic, Inc., d/b/a
PayJunction*

FOX ROTHSCHILD LLP
999 Peachtree Street, N.E.
Suite 1500
Atlanta, Georgia 30309
Tel:   (404) 881-5941
Fax:   (404)962-1200
lrogers@foxrothschild.com
gchichester@foxrothschild.com

DocuSign Envelope ID: 2B181172-F70A-4B64-B5C7-1F04E419B9B0

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### COLUMBUS DIVISION

| | | |
|---|---|---|
| MESSIAHIC, INC., d/b/a PAYJUNCTION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action |
| v. | ) ) | No._____ |
| GLASSER IMAGES, LLC, and JACK GLASSER, | ) ) ) ) | |
| Defendants. | ) ) | |

## VERIFICATION

I, Matt Odirakallumkal, declare as follows:

1.      I am the Director of Risk for Plaintiff Messiahic Inc., d/b/a PayJunction in the present case and am authorized to make this Verification.

2.      I have personal knowledge of the facts set forth in the Verified Complaint in the present case.

3.      I verify under penalty of perjury that the facts set forth in the Verified Complaint in the present case are true and correct. 28 U.S.C. § 1746.

Executed on the 12th day of November, 2021.

DocuSigned by:

*Matt Odirakallumkal*

5AE15F60566B438...

Matt Odirakallumkal